## VAN VALKENBURG et al., Appellants, *v.* HUFF et al., Respondents.

When a Court is laying down a general rule of law, it is not improper to notice exceptions to the general rule or such circumstances as will prevent its operation.

When A first locates a ledge on certain croppings extending eight hundred feet northward and southward, B afterwards locates a ledge near by and is encouraged to go to work by A, who declares it to be his opinion that there are two ledges and that their claims will not interfere. Afterwards, it turns out there are in fact two distinct ledges running into the earth at different angles and widely diverging as they go down, but both mingling their croppings together where A made his older location, the declarations of A are evidence he located but one ledge and may operate as an estoppel against his claiming both.

Until there is some decisive act to show an ouster or adverse possession, the possession of one joint tenant, or tenant in common, inures to the benefit of all co-tenants.

If A locates a mining claim in the name of B, occupies and works on it, but uses B's name, and does all acts in his (B's) name, he cannot maintain any action for the claim in his own name. The law would consider his possession the possession of B. He could only acquire an independent right in the claim by abandoning the first location and re-locating in his own name. His rights would date from second location.

APPEAL from the District Court of the Third Judicial District, Territory of Nevada, Hon. H. M. JONES presiding.

*Pitzer & Williams,* Counsel for Appellants.

*Stewart, Baldwin & Hillyer,* for Respondents.

Appellants' brief assigns as error the several instructions which were given to the jury in the Court below, all of which are noticed in the opinion of this Court, and that the verdict was not sustained by the evidence.

The respondents filed no brief.

Opinion by BEATTY, J., full Bench concurring.

In this case the respondents contend there is no statement on motion for new trial, and that in the absence of such statement this Court cannot review the action of the Court below in refusing a new trial. The verdict was rendered and judgment entered by the Clerk on the 24th day of March, 1863.

Van Valkenburg *et al.* *v.* Huff *et al.*

On the 26th day of March, 1863, a notice of motion for new trial was served. This notice appears to be formal and correct.

On the 3d day of April, another paper is served on respondents' counsel, which is headed "motion for new trial." Then in the body of the paper follows a *notice* that a new trial will be moved for, on a specified day; that the motion will be founded on certain grounds, viz: That the evidence is insufficient, etc. Then follows a statement that certain writings, notices, etc., will be relied on in support of the motion.

This is a rather informal statement, yet it is, in our opinion, a good one. If the papers and documents referred to are sufficient to show error in the Court below, then the appellants should have a new trial. But whilst this statement was sufficient for the motion in the Court below, there seems to have been no steps taken to identify the papers used in that Court. There is no statement on appeal. There is no certificate of either Judge or Clerk as to whether the papers copied in transcript were the papers used or referred to in the Court below on the motion for a new trial. Reference is made in the statement to the testimony as taken down by a short-hand reporter appointed by the Court. There is a large mass of evidence included in the transcript, but there is nothing to show it is the evidence taken down by the reporter, nor, if taken by him, whether it is a part or the whole of the evidence. No certificate of either Judge, Clerk or reporter, is attached to the evidence. The Judge certifies to the instructions given and refused; and the exceptions taken to his rulings in regard to instructions. But beyond this there is no certificate to anything, unless it be the Clerk's certificate to filing a paper, or some matter of that sort. Any private citizen could make out such a transcript and put in it any evidence he saw proper, and violate no law that we know of in so doing. The transcript is made up of a medley of different kinds of paper of various sizes, colors and shapes, written, much of it, in a hand that is almost illegible. Had such a transcript been filed, at, or just before the present term of the Court, we would certainly have required the appellant to file a proper transcript duly certified, or else dismissed the appeal. But as the case

came to us from our predecessors in office, and no action was taken by them for correcting the transcript or dismissing the appeal, we have waded through it and examined all the evidence presented therein.

It is proper, however, to say, that nearly all the evidence appears to have been given with reference to certain maps which were before the jury. Those maps do not accompany the transcript. Therefore much of the testimony which relates to the relative locality of the works of the plaintiff and defendants, is totally unintelligible to the Court.

Looking, then, to the pleadings, and so much of the testimony as is intelligible, the facts of the case appear to be as follows:

In June, 1860, a claim was located by certain parties known as the Comstock Continuation Company, near the Devil's Gate, in Lyon County. The location was made of a ledge, and the notice placed on certain croppings of quartz, and claimed eight hundred feet northerly and southerly therefrom. In June, 1860, defendants made a location on a ledge in the same vicinity, and commenced work on the same.

When the plaintiffs and their predecessors made their location of the Comstock Continuation Claim, they inserted among the names of the locators, H. Mason, T. Stoneking and William Miles. These were the names of certain parties living in the State of Illinois, and most probably never heard of their names being used in the location of this claim. These names were inserted in the notice at the instance of Moses Driscol, Mark Peters and Christian Higgings. Each of the three last named parties had the name of a friend in Illinois placed in the notice, intending the location to be for their own benefit, but using a friend's name either to conceal their own connection with the Company, or from some caprice or other motive into which it would be useless to inquire. Both companies went to work and continued to prosecute their works with considerable labor and expense up to 1862.

There is some evidence to show that from 1860 to 1862 the two companies worked amicably in the same immediate vicinity, supposing that they had separate and distinct ledges. Inclines and shafts, tunnels and drifts, were run into the hill

where the ledge or ledges are situated, by both parties, and in 1862 the works of ·the two companies began to interfere with each other. This interference brought on a quarrel, and finally a personal conflict between the workmen of the two companies. The plaintiffs (the Comstock Continuation Company), proving the weakest .or least belligerent, withdrew from the conflict and brought suit.

The evidence would seem to indicate the plaintiffs were where they had a right to be when they were assaulted. But this action, if we understand it, is in the nature of eject- ment, and even if plaintiffs were assaulted on their own ground, this could not give them a right to recover ground in ejectment which belonged to defendants. Although there may have been an unjustifiable assault on plaintiffs, made by some of the defendants or some of their servants, it does not affect the question in this case. That question is, who is entitled to the possession of the ground, or mining claim, or ledge of quartz, described in the complaint?

The plaintiffs relied on the proof of their prior location, constant work of their claim, and the *opinion* of divers wit- nesses that there was but *one* ledge there, and all the works of both companies were on that ledge. Also, on the facts that if there were two ledges, still the croppings were all mingled together, and their location of a claim or ledge on those crop- pings would give them a right to all ledges which outcrop- ped at that place.

Defendants, on the other hand, introduced some evidence, and the opinion of many witnesses, to show that there were two distinct ledges; that while the two ledges came together and mingled their croppings on the surface, that under ground they were distinct ledges, separated by bed rock and con- stantly diverging. The one being nearly perpendicular, and the other having a much greater inclination. That their loca- tion was made about two years past as of a separate ledge, since which time they had continuously worked it. That the plaintiffs knew of their claim, and work done there, for a long time past, and made no objection until recently.

With this general view of the facts, the question to be de- termined by this Court is, were the instructions given by the

Court below correct, or were they erroneous and prejudicial to the plaintiffs?

Before examining the instructions complained of, we will say that the foregoing statement embraces all the facts which appear to us material, so far as we are able to understand them from the transcript before us, giving full weight and effect to anything therein contained. If we had had the maps, a copy of the notices of location, etc., before us, possibly some other material facts might have been shown. But we can only examine this case as far as it is made intelligible by the transcript.

The first assignment of error is this: That the Court, after stating what a miner acquires by posting notices, etc., goes on to say those rights will hold good against subsequent locators, " unless there should be an abandonment or extinguishment in some form, in whole or in part, of such original claim." It is contended that the qualification expressed by the words within the quotation marks, was inapplicable to the state of the evidence and pleadings in this case, and calculated to mislead the jury.

It is not pretended that the principles contained in that qualification are against law, but that there is nothing in the case to give point or effect to the qualification. If there were nothing in the case to give point or effect to this qualification, we think it would not afford the appellants any grounds of complaint.

When a Judge is laying down general rules in regard to established principles of law, it is not improper for him to allude to exceptions to the rule, or to notice such circumstances as would prevent its operation.

But we are of opinion that the qualification in this case was proper and necessary, in order to fairly submit the case to the jury. If we admit that the location of the plaintiffs was sufficient to make a valid claim to all the ledges outcropping at that place, still, if after the location, they went to work on one ledge, and the defendants, with their knowledge, went to work on *another* ledge along side of them, and plaintiffs, instead of objecting, encouraged the defendants to go on by saying they thought there would be no interference between

the two companies, that they were on different ledges, this might be held as either evidence of abandonment of the ledge worked by defendants, or it might be held as an estoppel against plaintiffs. There certainly was some such evidence as this. We therefore think the qualification was proper.

The next error complained of is that the Court gave the third instruction as follows: "If the out-croppings of two quartz ledges be mingled, confused and blended, upon or near the surface of the ground, and a person or persons—supposing these croppings belong to and be connected with a single ledge or lode—locate claims thereon as upon a single ledge, they do not thereby become entitled to claim both ledges, they must make their election within a reasonable time, which of said ledges they will take by virtue of their location. If they should fail within a reasonable time to elect and choose which of said ledges they would take by virtue of their location, and other persons should, in good faith, subsequently locate claims upon one of said ledges, and go into the possession thereof, the right of election of such prior locators would be taken away, as against such subsequent locators, and they would be confined to their claims upon the other of two ledges."

This instruction seems to be the one covering the most important ground in this whole controversy. The evidence shows (if we can consider it as before us) that the plaintiffs located a claim on certain croppings extending eight hundred feet each way northerly and southerly from where the notice was posted. The notice is not to be found in the transcript, and we cannot tell what its language is. Whether its terms are sufficiently broad to include several ledges, or only one, we cannot tell.

Neither are there any mining laws set out in the transcript whereby we might determine whether a company locating a claim on a hill-side, would be entitled to locate only one ledge, or might be entitled to locate all on the hill-side from top to bottom, or from one base to the other of the hill. We are left in the dark as to many things which might be important in determining the propriety of this instruction.

We do know, however, that whilst the plaintiffs were the first locators (in January, 1860), the defendants located shortly after on their ledge, and there appeared to be no objection by

the plaintiffs, but an opinion was expressed by one of the locators of plaintiffs' claim, and one who was actually engaged at work on it, that there was no conflict in the two claims.

This would indicate that plaintiffs tacitly admitted that if there were two distinct ledges defendants were entitled to the one on which they were at work.

It would seem to be an admission, too, that they (plaintiffs) located but one ledge, and did not claim all ledges out-cropping at the place. Under these circumstances we are inclined strongly to the opinion that the plaintiffs were entitled to only one ledge. If so, this instruction would seem to be perfectly fair, and to present the case to the jury as it should have been presented. If there were two ledges (and the jury certainly must have so believed to find for defendants), the plaintiffs were at work on one, and the defendants on the other.. The work of plaintiffs on one ledge, was an election of that ledge. There was nothing in the instruction prejudicial to plaintiffs, if they only had right to one ledge.

The third assignment of error is, that the Court gave a certain instruction in regard to the possession of joint tenants, and tenants in common, to the effect that the possession of one was the possession of all, except when some decisive act was done by the one in possession, amounting to an ouster of his co-tenants.

Our answer to this assignment of error is, that we see nothing wrong in the instruction, and if there is anything technically wrong in the language used, we cannot see how it could injuriously affect the appellants.

The fourth assignment of error is, that the Court gave an instruction in these words:

" No person can claim title to mining ground under a location made ,by posting and recording a notice, except those whose names are in the notice, or those who claim by derivation of title under such original locators. A claim made in the name of one person, does not innure to the benefit of another, simply because of an intent on the part of such other, at the time of the making the location, that it should innure to his own benefit.

" Where parties claim under a location made under the min-

ing rules, their title cannot have an inception prior to date of a notice of location in which their names, or those of their grantors, appear.

"A party in whose name a location of a mining claim is made, is presumed, *prima facie*, to assent to the same. The possession of a portion of tenants in common of a mining claim is, in law, the possession of their co-tenents. When a location is made in the name of certain persons, and it is desired to substitute other and different names for a portion of the original locators, this can only be done by a re-location of the claim. If such re-location be made, the names of some of the original locators and claimants being inserted in the notice of re-location, together with other and new names substituted in the place of one or more of such original locators, such re-location can be invoked as against third persons, and in behalf of such subsequent re-locators, only from the date of such re-location. The claim of those parties whose names are in the original notice, and also in the notice of re-location, would, if they continued in possession of the claim without abandonment up to the date of re-location, still hold good under their original notice, and be entitled to whatever priority of right it would give them, unless, at the time of making the re-location they should abandon their claim under the original notice."

It will be recollected that when the plaintiffs' claim was located, that three of the parties who participated in having the location made, to wit: Driscol, Peters and Higgins, instead of having their own names inserted among the locators, each selected the name of a friend living in Illinois, and had such name placed on the notice. Afterwards a request was made of the Recorder of the mining district to have the names of Driscol, Peters and Higgings substituted in place of their absent friends whose names had been used in the first place.

But counsel for appellants complains that there was no evidence of re-location introduced. We think there was some evidence on this head. But if there was none, so much the worse for him. If there was no re-location Peters, Driscol and Higgings had no title whatever, and neither they nor those claiming under them, could recover in this action. The

appellants cannot complain that the hypothetical case put by the Court was more favorable to them than the facts of the case would justify.

.. We think if there was any error in this instruction it was not against appellants, but in their favor.

We are of the opinion that if Higgings, Peters and Driscol had any rights which could be asserted in this action, they date from a re-location subsequent to defendants' location.

But, say counsel for appellants, Higgings, Peters and Driscol were in actual possession of the mine from June, 1860. If they were in possession, it was a possession giving them no right of action. Their position was that of servants or employees of their owners.

The whole claim was held in the name of other parties. If they chose to put themselves in the position of servants, employees or representatives of Mason, Stoneking and Miles, the law will hold that whilst they occupied that position their principals and not themselves were in possession of the mine. What we have said about the last instruction quoted is equally applicable to the tenth instruction given by the Court.

We can see no error in it. The eleventh and last instruction embraces the same principles laid down in the third.

As in our opinion that instruction was not erroneous, neither is there any error in the eleventh and last instruction.

The evidence as to whether there are one or two ledges we think pretty well balanced.

The preponderance seems rather to have been in favor of, than against the finding of the jury. Certainly there was nothing in the evidence to justify this Court or the Court below in interfering with the verdict.

The judgment of the Court below is affirmed.